Case number 255579 Connie Reguli et al. versus Tracy Hetzel et al. Argument not to exceed 15 minutes for appellant with 5 minutes for each appellee. Mr. Crane you may proceed for the appellants. Good morning, your honors. May it please the court, Larry Crane on behalf of Connie Reguli. As the district court noted in this case, this is a very difficult and troubling case and the court recognized that the plaintiffs have suffered an injustice of being prosecuted for conduct that all the relevant state actors apparently believe should be or should constitute a crime, but that the legislature had not yet seen fit to define as such. The court said the ordinary bulwarks against poor police work, the prosecutors and the judge failed in their duties by effectively rewriting the law to match the circumstances to the plaintiff's detriment. Probable cause to initiate a criminal prosecution exists where the facts and circumstances are sufficient to lead an ordinarily prudent man. But this, but the interpretation of this statute, and I'm not sure I agree with the way the Tennessee Court of Appeals read the statute, but it's their statute, they read it, but it's a close question it seems to me, isn't it? I mean, it's a reasonable, it's a reasonable reading. Their reading was reasonable, the court disagrees, and your client benefited because the criminal prosecution gets thrown out, right? You must read in context what took place over the course of the prosecution and investigation in this case, and I think that leads to a different motivation on the part of the defendants in this case, four of whom were practicing and licensed attorneys. But why? I think the element of the claim is that it has to lack probable cause, right? There cannot be. Regardless of this, the, has it ran, I think is the case. I mean, regardless of the subjective motivation of the of the law enforcement people, we're looking at whether it was probable cause or not, right? Or whether it was reasonable for them to believe they had probable cause. Well, I think your honor is perhaps reaching the point that you're giving more credit to them in their reasonable interpretation. These are attorneys who dealt with this statute time and time again, knew that this was an essential element for the prosecution of custodial interference. And without a crime, when you have no crime, you cannot have probable cause, and without probable cause, we submit no immunity, either absolute or qualified in this case. So after the named defendants made and influenced and participated in the decision to prosecute Miss Reguli and her client, they set on a course, knowing from the very beginning, in fact as early as I believe August of 2018, Detective Russ promised that Connie Reguli, quote, will be indicted. She was referred to as a criminal by Tracy Hetzel, even before there was an attempt to secure an indictment. There were efforts along the way that Miss Reguli made to cooperate with DCS in this process. And rather, they used this juvenile court case as a springboard to launch a criminal investigation against Miss Reguli, who had long been the nemesis of these DCS workers. And they issued subpoenas for her personal phone call records, for her personal social media records, none of which produced any evidence of a crime. And so in order to suit the circumstances that fit the crime, they deliberately left out an essential element. The Court of Appeals in Tennessee recognized that even if they had left the element in, there was never a visitation order. There was never any predicate. It would be like prosecuting a crime where there's no corpus delecti. There was no crime committed. The fact that the reversal was on the jury instruction issue and not on insufficiency in the indictment. So the indictment itself, on its face, is okay, right, according to the Court of Appeals? I mean, why doesn't that take care of the probable cause? It does not for this reason. For purposes of the federal law, that indictment only creates a rebuttable presumption. It's not conclusive. Where there is no probable cause, as we allege in this case, there cannot be probable cause because there was never a crime. Connie Reguli never committed a crime recognized by the state assembly, General Assembly. Only the General Assembly can define what a crime is. But why can't, why can't they rely on the cases that say, I'm sorry, that there's, if you have a reasonable belief, if you, if you make a mistake of law, right, a reasonable mistake of law, why is that not enough for probable cause? We, we submit this was not merely a matter of reasonable mistake of law. This was not a sloppy interpretation or even a misguided interpretation. This was a deliberate omission from this, this statute. Even the trial judge inquired of the district attorney, Miss Evans, do you not have a visitation order? And when she said no, he said, it's going to be a very steep climb, isn't it? And so... All right, Mr. Crane, why, why are not the prosecutors entitled to absolute immunity under these circumstances? Because the prosecutors, both of them, who pursued this indictment were aware from the very beginning, may it please the court, that they were missing an essential element of this. All right. So you're saying there's no absolute immunity if the prosecutor gets it wrong? Is that what you're saying? I mean, what, what sort of exception? I, I don't see a lot of exceptions to absolute immunity, as long as the prosecutors are doing the duties that they're assigned. And if they do it wrong, incorrectly, I, I don't, I don't see any denial of immunity. Tell me, tell me what, what's your best authority, that there's no absolute immunity here? There, there's no absolute immunity from the standpoint that the, we're not dealing with a case of fabricated crime or misrepresentation before a grand jury. We're dealing with a decision by a prosecutor. Sure, you're saying they prosecuted for something that wasn't a crime. Okay, what's your best authority, that in that situation, the prosecutors are not entitled to absolute immunity? We, we cite to the case of Hope v. Pelzer, a United States Supreme Court decision, which describes obvious cases, and where there does, there is no, where no reasonable official could think that the conduct was lawful, even without a fact-matched precedent. And so that is precisely what we're dealing with here. All right, so that's, that's the standard you want us to apply, that it was not reasonable for them to bring this, the indictment? Well, I don't, I don't, I don't think that's a standard of absolute immunity, by the way, but I'll take a look at the case, but I don't think that that is the standard. Well, Your Honor, also the case of Spurlock v. Satterfield, we saw it in a brief, this court made clear that the doctrine of absolute immunity should be regarded as a shield for those individuals who are intimately involved in the judicial process to carry out their responsibilities without fear of vexatious lawsuits, but... Which is exactly a situation here, right? They got it wrong, according to the Tennessee Court of Appeals, but it doesn't mean they're not entitled to absolute immunity. Well, but absolute immunity, as this court so noted, should not be used as a sword allowing them to trample the statutory and constitutional rights of the accused, and that's what we allege took place here. Okay, how about the qualified immunity of the officers? How are the officers supposed to know that this, I think it's an ambiguous statute as well, and I kind of agree with Judge Nel Bandy in that probably the better construction is the construction that the prosecutors put on this statute, but being that it's made, how will every reasonable officer know that they're investigating this, that it doesn't constitute a crime? How are they supposed to know as laymen that this isn't a crime? Well, Tracy Heltzel, of course, is a licensed attorney. She's the one who was at the helm of this investigation from the very beginning. She certainly was on notice of the absence of a essential element, a virtual element. The only other officer, well, there was Ms. Russ. Ms. Russ was encouraged by Ms. Heltzel as an attorney and both her superior Chief Reed, to pursue this investigation long before, months before, there was ever any attempt to indict Ms. Regula. They were acting as though they had probable cause to investigate. There was never, I mean, the probable cause to issue the search warrants. Well, I know, but how does every reasonable officer would have known that? And that's really your standard, that, I mean, qualified immunity protects all but the incompetent, the blatantly incompetent, and I don't know how you get over that hurdle here. Well, we believe that the officers in this case were acting, as we allege, in conjunction with those who knew, who had advised them as early as, I believe, October of 2018, that there was a crime to be investigated. And I believe that they knew and were on notice from that point on, that there was a missing element from this indictment, from this charge. In other words, there was a total absence of any probable cause. You say they knew there was a missing indictment or should have known? They knew or should have known based upon the fact that... Okay, there's a distinction, I think. I mean, you said they knew. Do you have any evidence they knew that there was a missing element? We have evidence of a meeting with them and the attorneys involved as early as, I think, October of 2018. At that point in time, there was no visitation order. There was. All they had to do is look at the statute. The statute is very clear. That sounds like should have known to me. That's all. So, we believe that the facts in this case demonstrate as well that there was a coordinated plan from the very beginning. In August, while litigating in juvenile court, Tracy Hetzel, who initiated this process, wrote a memo asking to go seek criminal prosecution against Ms. Reguli. Ms. Hetzel met with Detective Russ in September and said or promised that Attorney Reguli would be indicted. In December, she obtained a secret search warrant, Russ did, to go after Ms. Reguli's private social media. This whole chain of events is built around what appears to be a felony allegation that simply did not exist. And as the Court of Appeals recognized, there was never a crime committed in this case. And so, we believe that the evidence shows an attempt to fabricate that crime and to do so with full knowledge of the fact that there was a missing critical element. And that probable cause never attached, simply never attached in this case, because there never was a crime. The cases cited by the defendants all rely upon cases where there was fabricated evidence or misrepresentation before a grand jury. That's not what we're dealing with here. We're dealing with an effort to spearhead a criminal prosecution without any evidence of having committed what is the critical element, essential element, in the crime. Thank you. You have your rebuttal. May it please the Court. Good morning, Your Honors. Amber Barker from the Tennessee Attorney General's Office, here on behalf of the defendant appellee, Tracy Hetzel. Ms. Hetzel was an attorney employed by the Tennessee Department of Children's Services when she learned of potential criminal behavior while litigating a child welfare case. She did what any DCS attorney would do and turn that information over to law enforcement. Plaintiffs now seek to hold Ms. Hetzel individually liable because that information ultimately led to an investigation, criminal indictments, and convictions that were later overturned on appeal. The decision of the Middle District of Tennessee dismissing the claims against Ms. Hetzel should be affirmed for two reasons. First, plaintiffs failed to state a claim for relief against Ms. Hetzel, and second, she's entitled to qualified immunity. On appeal, plaintiffs only challenged the claims of malicious prosecution and civil conspiracy under both Section 1983 and Tennessee tort law. I'll focus today on the 1983 claims. First, the allegations in the complaint do not state a claim that Ms. Hetzel, as a DCS attorney, maliciously prosecuted plaintiffs or conspired to do so. The malicious prosecution claim was dismissed by the District Court because the complaint failed to establish the very first element that the defendant made, influenced, or participated in the decision to prosecute the plaintiffs here. The facts alleged against Ms. Hetzel are that she was litigating a child welfare case involving Ms. Hancock, the plaintiff's child. The juvenile court entered an order removing that child from Ms. Hancock to put the child in DCS custody. Ms. Reguli, who was Ms. Hancock's attorney, learned about that order, met with Ms. Hancock at a hotel, and then later the child was removed by law enforcement from Ms. Reguli's home on the next day. Ms. Hetzel then got a subpoena for that hotel video surveillance footage as part of her child welfare case. After reviewing it, she then turned it over to law enforcement during a meeting in the fall of 2018. These facts do not show that Ms. Hetzel was involved in a decision or influenced a decision to prosecute the plaintiffs. The complaint states over and over again that after that fall meeting in 2018... How is it that she didn't influence it at all? I mean, that seems like a pretty broad standard. I mean, her work was essential to the eventual prosecution, wasn't it? That may be true, Your Honor, in that she may have instigated it initially in that by providing that information it may have started rolling the ball down the hill. However, it's very similar to when other officers provide truthful information to prosecutors. Just providing truthful information to law enforcement or even the prosecution does not equate to influencing a decision to actually prosecute. So your client's role in this case, you're treating her more like a police officer than a prosecutor? She would be more closely attend to a police officer, but she's even more attenuated than that because she's not a police officer who's investigating a crime. For purposes of immunity, she's just, you're saying she would have to fall into the category of someone like an investigator who's providing false information to a malicious prosecution. That category would make the most sense to apply to her. I'm not aware of any cases that are more specific to her role and where she is acting in a completely separate avenue of state government and learns of information. But the cases that do deal with the police officers at least focus on whether there was truthful, unaltered, not misleading information given. And even when the police officers who have the job of investigating crimes turn over truthful information, this court has held repeatedly that that is not the same as influencing a decision to prosecute. The prosecutors make that decision. Is there no allegation that she did anything other than just provide truthful facts? Aside from her participation at trial when she was called as a witness, no, your honor. She provided the truthful information. There's no allegation at all in the complaint that the information she provided was untruthful, misleading, altered in any way. Today it's been argued that she was told during that fall 2018 meeting that the plaintiffs will be indicted. That is not in the complaint. In their briefing, the plaintiffs rely on an exhibit they attach to a response to a motion filed by a different group of defendants after Ms. Hetzel had already been dismissed from the case. So that allegation is not in the complaint. It was not before the district court in ruling on Ms. Hetzel's motion to dismiss. If there are no further questions. So even though Ms. Hetzel is an attorney, she did not render a legal opinion as to whether this constituted a crime or not. That's correct. She did not. The memorandum that she submitted to her supervising attorneys asking for permission to take this evidence to the police did not identify a specific crime. It did not do any type of analysis. It was simply asking permission to just hand this over to law enforcement. All right, so she really didn't do anything in a role of an attorney here. The question was, she was more of an investigator. Somebody turns over information. Yes, Your Honor. She just received that information in her role as an attorney in the civil case involving DCS. All right. Thank you. Thank you. Thank you. Good morning, Your Honors. Aaron Bernard from the Tennessee Attorney General's Office on behalf of the two prosecutor defendants, Halpert and Evans. I'd like to pick up where you left off with my friend on the other side, Judge Griffin, in your colloquy about the function of the prosecutors. All of the allegations in the complaint speak to standard prosecutorial functions that happen in every single case. They reviewed evidence already collected. They reviewed evidence that was already collected. They brought an indictment to the grand jury, and then they tried these cases to verdict. That is the heartland of prosecutorial immunity, those types of functions. And as this court has always made plain, the analytical key to prosecutorial immunity is that of advocacy. And all of the allegations in the complaint speak to the legal advocacy done by the prosecutors. My friend on the other side puts a great deal of emphasis on this notion that there was not a crime. But we have two points on that. First, it mistakes the prosecutorial immunity test. The prosecutorial immunity test is always one of function. What were the prosecutors doing? Were they acting in a prosecutorial advocatory role? Were they in an evidence-seeking function? And two, in every case, in every malicious prosecution case, there's a favorable termination. How do we deal with the conspiracy claim and absolute immunity? Isn't the allegation that your clients conspired before there was an actual prosecution? They're just part of this group? I mean, they wouldn't get immunity from absolute immunity in that situation, right? I believe two points on that, Your Honor. One, the allegations in the complaint do not speak to a pre-indictment conspiracy directed by both of the prosecutors. If you look at the two allegations in the complaint, at paragraph 69 and 123, it just says that Evans looked at evidence already compiled by police. There is no factual allegation in the complaint about directing a prosecution, about ordering more evidence to be gathered, about giving legal advice about the propriety of gathering more evidence. But the allegations in the complaint speak strictly to receiving evidence already collected, which is a classic prosecutorial function. As the Supreme Court has long held, in Buckley, the quote is, professional evaluation of evidence assembled by the police is accorded absolute immunity. And that is likewise in accord with this Court's rule recently from the Smith v. Wayne County case that advocacy does not start at the courtroom door. The two allegations about pre-indictment behavior are exactly that, receiving evidence already collected by police, not going out there in an evidence-finding function. And then with the absolute immunity, they would be immune to the conspiracy charge. That's the second point, but we do not believe that there is any allegation in the complaint that could put the prosecutors in with that. And I would just go back to one point that my friend on the other side raised, which is he says the proper test here for looking at prosecutorial immunity is Hope v. Pelzer, the Hope v. Pelzer exception, but that is a notion for qualified immunity, about the idea that there is an obvious case that every officer should know in the qualified immunity context. That does not govern here, where absolute immunity is about advocacy. Looking at the function that the advocates played, were they doing prosecutorial roles? And here the question is unequivocally yes. If there are no further questions, Your Honors. I don't believe we have any. We urge that the court affirm. Good morning, Your Honors. Cassandra Crane on behalf of the City of Brentwood, Tennessee, Detective Laurie Russ, and Captain David O'Neill. The claims against the city defendants arise essentially from Detective Russ's investigation, which was referred to her by DCS, that Ms. Hancock willfully violated an ex parte order placing custody of Ms. Hancock's daughter with DCS, and that Ms. regularly assisted her client in doing so. The relevant facts, Your Honor, from the complaint, which is a lengthy complaint, that are relevant to the court's dismissal of the claims against the city defendants, is that essentially Detective Russ met with prosecutors and Ms. Hetzel at one point to discuss the investigation, that Captain O'Neill, Russ's supervisor, also attended that meeting, and that the investigative file was turned over to prosecutors. What is not alleged in this case, and what cannot be alleged in this case because no facts exist, is that Ms. Russ fabricated evidence, provided a false statement, or omitted any evidence from the file. So plaintiff's entire claim against the city defendants is premised upon, I guess, a claim that Detective Russ somehow should have explained the law to prosecutors, or pointed out an absence of evidence. That's not the standard to establish a claim for malicious prosecution. And plaintiffs have never pointed out any case law in this court in which an officer has been either found to commit a constitutional violation or qualified immunity was removed for failure to explain what I think is probably a confusing statute to the prosecutors. I think the claims against the city defendants are straightforward. So if Your Honors have any questions. Your Honor, briefly, Your Honors, addressing first the functionality test for prosecutorial immunity. We have argued and cited cases to this court that before probable cause exists, prosecutors act as investigators and administrators, not as advocates. When they're acting in that capacity, they're not entitled to any form of immunity, absolute or qualified. What authority do you have for that kind of a point, that you can have a discrete period of time when a prosecutor is not a prosecutor? Your Honor, please, I'm looking at the case of Gregory v. City of Louisville. I believe also the case that Your Honor helped decide was Reeves v. Town of Smyrna, which addresses the involvement of a prosecutor in the investigatory process. And counsel, what evidence do you have that the prosecutors engaged in the investigatory process in this case? Well, because there never was probable cause to clothe them with immunity. All their actions, in fact, Evans... No, I asked you, what evidence do you have that they were involved in the investigatory process? Well, Assistant District Attorney Evans, for example, met with Ms. Hetzel and with Russ and issued subpoenas to investigate whether or not there had been a violation of some protective order by Ms. Reguli. Found nothing. And by the way, all the charges in this case for any custodial, not custodial interference, but removal in the juvenile court were dismissed. The juvenile charges were all dismissed. I'm still trying to get an answer to my question. I guess your answer is they had subpoenas issued. That's the investigatory process they were involved in. That sounds like a judicial process to me. They also met in the field with the witnesses. Tracy Hetzel was more than just an attorney. She's a civil attorney who was trying to initiate criminal process, bear in mind, but she was also acting as an investigator here and should not be clothed with immunity for that reason. But the conspiracy allegations, which kind of dovetail in with the functionality test, Evans acted as an investigator when she met with... as I said, in the field where she was participating directly with trying to find some evidence of a crime. There simply was no evidence that Ms Reguli had committed a crime. In this case... Sir, your time has expired. Thank you for your argument.